UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TERRY W. JOHNSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | NO. 3:09-cv-0657-B |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on April 9, 2009. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On November 20, 2003, plaintiff Terry Johnson (hereinafter "Plaintiff" or "Johnson") filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging a disability onset date of April 21, 2003. (Administrative Record (hereinafter "Tr." at 58-61). That application was denied on January 26, 2004, (Tr. 148), and no request for further review was made. (Pl. Br. 1). On May 5, 2005, Plaintiff protectively filed applications for DIB and SSI, claiming disability due to high blood pressure, diabetes, herniated discs, and emphysema. (Tr. 15, 140, 63-65, 506-508). He again alleged a disability onset date of April 21, 2003, *id.*, and has since amended his claim to a closed period of benefits from April 21, 2003 through July 21, 2006, when he was released to work by his treating neurosurgeon. (Pl. Br. 2). His claim was denied by the state agency initially and on

reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted a hearing on February 25, 2008, at which Plaintiff appeared with counsel and testified on his own behalf. (Tr. 15, 524-562). The ALJ also received the testimony of Vocational Expert ("VE") Susan Brooks. *Id*. On May 5, 2008, the ALJ denied Plaintiff's request for benefits, finding, based on the testimony of the VE, that he had been capable of making a successful adjustment to other work existing in significant numbers in the national economy and therefore was not disabled from the date on which he was injured. (Tr. 27). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on February 20, 2009, the Appeals Council denied his request. (Tr. 6-9). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). Plaintiff filed his federal complaint on April 9, 2009. Defendant filed an answer on June 8, 2009. On June 26, 2009, Plaintiff filed his brief, followed by Defendant's brief on August 21, 2009, and Plaintiff's reply on September 1, 2009.

<u>Standard of Review - Social Security Claims</u>:  When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22

(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment.  *Villa*, 895 F.2d 1022 (citations omitted).  When the Commissioner's findings of fact are supported by substantial evidence, they are conclusive.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Discussion:   To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that he is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505, 416.905(a).  Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Under the first four steps, a claimant has the burden of proving that his disability prevents him from performing his past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform.  *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence.  *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or not disabled at any point in the five-step review is

3

conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step five. She noted that Johnson was born February 19, 1971. (Tr. 26). Therefore, he was 32 years old at the time of his alleged onset date. (Pl. Br. 2). The ALJ noted that Johnson had a limited education and was able to communicate in English. (Tr. 26). Johnson attended school through the seventh grade and later obtained his GED. (Tr. 527-28). She found that Johnson had a severe combination of impairments, to wit: "disorders of the back (status post lumbar spine fusion), diabetes mellitus, obesity, and depression", but that this combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). She found that Johnson would be unable to perform his past relevant work as a security guard, van driver, or furniture delivery person. (Tr. 26). She found, based on the testimony of the vocational expert and considering Johnson's age, education, work experience, and his residual functional capacity ("RFC") for a modified range of sedentary work, (Tr. 19), that there were a significant number of jobs in the national economy that he could perform, including the representative occupations of "charge account clerk", "call-out operator", and "microfilm worker". (Tr. 27). The ALJ therefore concluded that Johnson was not under a disability and denied his claim for benefits. (Tr. 27-28).

Plaintiff alleges the ALJ failed to properly weigh the medical opinions of record and failed to properly evaluate his credibility. For the reasons discussed below, the court finds that the ALJ's decision is supported by substantial evidence in the record and that the proper legal standards were applied in evaluating the evidence.

Medical History: In 2003, Johnson worked as a cook at McDonald's. (Tr. 530-532). He

4

alleged his injuries first bothered him on April 21, 2003, and that he stopped working and became unable to work on May 4, 2003. (Tr. 80). On May 12, 2003, Johnson was seen for a work-related injury he incurred, allegedly on April 13, 2003, after he slipped in water on the floor, twisted his right ankle, struck his right knee, and fell upon his right hip. (Tr. 191).[1] On May 28, 2003, Dr. Frank Gonzales, M.D. treated Johnson for "strain, right paralumbar", and released him for light work. (Tr. 405).

On June 12, 2003, Dr. Gonzales wrote that Johnson could perform "light duty for two weeks, [and] may work [a] maximum [of] 5 hours per day." (Tr. 399). On June 26, 2003, Dr. Gonzales wrote that Johnson "needs physical therapy as previously requested, may return to work 5 hours per day with no lifting greater than 20 lbs; for 2 weeks." (Tr. 398). An MRI of the lumbar spine conducted on July 18, 2003, revealed loss of normal signal and disc protrusions or herniated discs at discs L3-L4, L4-L5, and L5-S1. (Tr. 308). Johnson filed his first application for disability insurance benefits and SSI on November 20, 2003. (Tr. 58-61). A field office disability report dated December 10, 2003, included observations from a face-to-face interview with Johnson, where the interviewer did not observe or perceive Johnson to have any physical limitations. (Tr. 98).

Dr. Gonzalez referred Johnson to Dr. Frank M. Fichtel, M.D. for a neurosurgical consultation, which took place on December 10, 2003. Dr. Fichtel's findings were "consistent

---

[1] In Plaintiff's brief, he lists the date of injury as April 13, 2003; (Pl. Br. 3); however, the medical report page referenced in the brief (Tr. 191) is dated May 12, 2003. Additional "Physician's Report of Employee Injury" forms completed by Dr. Gonzales on May 12 and 28, 2003 also list May 12, 2003, as the date of injury. (Tr. 403, 404). Plaintiff indicates in his application for benefits that the injury occurred on April 21, 2003. (Tr. 80). The majority of subsequent medical records over the following years document the Plaintiff's injury as occurring in "April 2003". However, the exact date of the injury is not a relevant factor in analyzing the Commissioner's decision.

with lumbar degenerative disc disease" that was "fairly asymptomatic" prior to Johnson's April 2003 fall, and that Johnson had "persistent mechanical low back pain" since then. He recommended Johnson lose weight, stop smoking, and remain active "in a non-strenuous fashion". (Tr. 307). In a daily activities questionnaire dated December 24, 2003, Johnson described his average daily activities as "helping my wife clean the house, watch my son's [sic] age 2 months, 2 years, 7years old." (Tr. 108).

On January 5, 2004, Johnson was seen by Dr. Dennis E. Karasek, M.D for a neurosurgical evaluation. (Tr. 383). After reviewing the records of Doctors Fichtel and Gonzales, Dr. Karasek warned Johnson against excessive use of Tylenol- the doctor noted Johnson had been taking 8-10 daily- and recommended Johnson receive epidural steroid injection and take Ultracet #180 twice daily. (Tr. 383). Johnson's initial applications for DIB and SSI were denied on January 26, 2004. (Tr. 148).

An MRI of the lumbar spine conducted on February 25, 2005, revealed disc protrusions or herniated discs at discs L3-L4, L4-L5, and L5-S1. (Tr. 329). A note from Dr. Gonzales' office dated March 24, 2005, indicates that Johnson requested a walking cane, was unable to "feel his leg", and that he fell. (Tr. 361). In a daily activities questionnaire dated April 20, 2005, Johnson described his average daily activities as "get up drink coffee- take my son to school & sit around due to severe pain." (Tr. 134). On June 24, 2005, Dr. A.E. Batres, M.D. examined Johnson, noting Johnson's history of pain and unexpected falls caused by his leg giving out since the accident in 2003. (Tr. 312). Dr. Batres opined that back surgery might help Johnson, and that his "other problems should respond and/or be adequately controlled by medical therapy." (Tr. 314). In a physical RFC assessment based upon Plaintiff's medical records dated July 26,

6

2005, consultative examiner Dr. Yvonne Post, D.O., stated the "exam, x-ray and past testing do not support a less than sedentary RFC." (Tr. 324). She noted a June 24, 2005 lumbar x-ray appeared normal, his gait was normal without assistance device, and Johnson was able to get up from a chair and on and off the table with no difficulty, but he was unable to heel-and-toe walk. (Tr. 324).

On August 4, 2005, Dr. Warren F. Neely, M.D., wrote a letter to Dr. Gonzales following Neely's neurosurgical evaluation of Johnson. (Tr. 224-225). Dr. Neely indicated that Johnson's range of motion was limited by about 40% in all directions, with pain at the extremes of movement; that Johnson "has not improved over three years of conservative care and has not been able to work"; and that surgery with partial discectomy and interbody fusion would be reasonable. (Tr. 225). Johnson was hospitalized from August 17-19, 2005, and underwent surgery for bilateral L5-S1 disk removal with interbody fusion. (Tr. 204-214). Dr. Neely noted that "[p]ostoperatively, he has done well. He ambulated on his first postoperative day." (Tr. 210).

On September 1, 2005, Dr. Neely noted Johnson was walking actively, would continue his walking program, was taking Parafon Forte and Darvocet,[2] and would continue wearing a brace for the next two months. (Tr. 223). On September 2, 2005, Dr. Michael Lane, M.D. noted that Johnson had a stable postoperative lumbar spine. (Tr. 441). In a daily activities questionnaire dated September 14, 2005, Johnson stated he was "unable to do a thing" and that he "had back surgery in August[,] on a walker, bed ridden, & will have two more surgeries."

---

[2] Parafon Forte may be prescribed for the relief of discomfort associated with acute, painful musculoskeletal conditions. Darvocet is a narcotic pain reliever. *See* RxList, The Internet Drug Index, http://www.rxlist.com/. (Last accessed September 28, 2009).

7

(Tr. 137-138). On November 3, 2005, Dr. Neely's treatment records indicate Johnson was "doing pretty well" and that the doctor was "pleased with his progress". (Tr. 222). He noted Johnson was taking no pain medication other than Advil, had no significant leg pain, continued to have slight hypesthesia[3] in his right foot, and that Plaintiff had not lost weight but continued participating in a walking program. *Id.* Among the medical records from Southwest Open MRI submitted by Johnson's counsel prior to the administrative hearing (Tr. 327-339) is Dr. Roberto A. Duran's statement dated December 8, 2005, opining that Plaintiff was permanently disabled from working at all. (*Id.* at 339).

On January 13, 2006, Dr. Neely noted Johnson would continue his medication regimen of Parafon Forte and Darvocet and continue his program of active walking. (Tr. 438). On March 31, 2006, Johnson was seen by Dr. Neely. (Tr. 437). He reported that Johnson' range of motion was limited at the waist by about 30%, noted that Johnson complained of "some pain" in his lumbar area, and continued Johnson's medication regimen. On April 3, 2006, results were compared with prior findings on January 13, 2006 and November 3, 2005, noting that Johnson had stable postoperative changes from November through April. (Tr. 443, 445).

An MRI of the lumbar spine on April 13, 2006, revealed well-positioned wire cages at L5-S1, no evidence of disk herniation or spondylolisthesis, and was otherwise unremarkable. (Tr. 436). On July 21, 2006, Dr. Neely released Johnson to work, advising him that he should not return to work as a roofer, but that a security guard job "would be perfect for him." (Tr. 435). In 2006, Johnson returned to work as a security guard for about four weeks, but left

---

[3] Hypesthesia: impaired or decreased tactile sensibility. *See* Merriam-Webster's Online Medical Dictionary, http://www.merriam-webster.com/medical/hypesthesia. (Last accessed September 28, 2009).

8

because it "was too much walking." (Tr. 529; Pl. Br. 2).

<u>Analysis</u>: As noted above, Johnson initially argues that the ALJ failed to properly weigh the medical opinions of record. He contends the ALJ found that the opinion of his treating physician Dr. Gonzales "was not supported and was inconsistent with other substantial evidence solely because Dr. Gonzales never prescribed pain medication and reported evidence of significant daily activities." (Pl. Br. 15). Johnson describes in detail some of the medical findings of Dr. Gonzales and the medications which he prescribed, asserting that the ALJ "failed to give due consideration" to factors including the length of treatment relationship, nature and extent of treatment, and consistency with the record as a whole. (Pl. Br. 15-16). Johnson further argues that the ALJ improperly accorded "limited weight" to the opinion of consultative examiner Dr. Batres, and accorded too much weight to the opinions of Dr. Neely and the state agency medical consultants ("SAMCs").

In her decision the ALJ described the medical evidence in great detail. (Tr. 21-25). In concluding that Johnson has "a history of lumbar spine impairments", she noted the disc bulges, protrusions, and herniation evidenced by Johnson's MRIs in July 2003 and February 2005. (Tr. 21). The ALJ declined to accord controlling weight to the May and June 2003 opinions of Dr. Gonzales, in which the doctor first released Plaintiff to perform light work, and subsequently limited him to working five hours per day with lifting no greater than 20 pounds. (Tr. 398, 404-405). She also discussed the June 24, 2005 report of the consultative examiner Dr. Batres, noting his opinion that Johnson could lift and carry ten pounds, sit for two hours, stand for twenty minutes, and walk a few blocks- and supporting liver and kidney problems. The ALJ gave limited weight to Dr. Batres's medical opinions since they were based largely on Johnson's

9

subjective allegations. ALJ Lokey then explained why she chose to afford greater weight to the reports and opinions of Dr. Warren F. Neely who saw Plaintiff between August 4, 2005 and July 2006. As noted above Dr. Neely operated on Johnson's back on August 17, 2005 and followed him until he discharged him from care the following July.

The ALJ found that Plaintiff had the RFC to perform sedentary work. (Tr. 19). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994). Moreover, the determination that a claimant is unable to work is a legal conclusion reserved exclusively to the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see also* 20 C.F.R. § 404.1527(e)(1). The ALJ stated in her decision that her RFC assessment that Johnson could "perform and maintain" a "limited range of sedentary work" was based on her review of all "of the evidence in the record". (Tr. 22). Her decision that Plaintiff had the ability to engage in sedentary occupations described in the vocational expert's testimony is supported by substantial evidence.

Second, Johnson argues that the ALJ failed to properly evaluate his credibility. Specifically, Johnson contends that it is unclear whether the testimony considered by the ALJ in reaching a credibility determination pertained to Johnson's daily activities at the time of the hearing, or his daily activities during the period he now claims he was disabled, from April 21, 2003 through July 21, 2006. Finding that the "statements concerning the intensity, persistence and limiting effects" Johnson made regarding the symptoms of his medically determinable impairments were "not credible", the ALJ stated that her credibility assessment was "due in part to multiple inconsistencies between [Johnson's] allegations and the medical evidence of record

and between [Johnson's] testimony and [his] written statements." (Tr. 25).

The ALJ stated that she considered Johnson's recent employment as a contract cable installer and his thought of returning to work as a roofer in July 2006 in reaching her credibility determination, observing that he would not have been considering a heavily exertional job such as roofer if his "pain were as severe and as limiting as alleged." (Tr. 25). These considerations were included in a thorough and detailed analysis in which the ALJ considered the medical evidence of record spanning the entire time period. (Tr. 21-26).

The ALJ noted that during the February 2008 hearing, Johnson testified to suffering greater limitations than he expressed in a December 2003 Daily Activities Questionnaire. (Tr. 25, 108-109). In December 2003, Johnson stated he could not sit or drive for over an hour, could not stand more than 2 hours without hurting, and could not lift anything over 10 pounds, despite the fact that in the intervening period he had a successful back operation and was discharged to return to work by Dr. Neely. He listed his daily activities as "helping my wife clean the house, watch[ing] my sons age 2 months, 2 years, 7 years old." (Tr. 108). During the 2008 hearing, the ALJ asked Johnson if he thought he had experienced any improvement since his August 2005 surgery, to which he responded "[n]o ma'am". (Tr. 533).

He testified that he could sit in a chair for 30 minutes at the longest, could walk 5 to 10 minutes before needing to sit, could stand "[m]aybe 20 minutes" before needing to sit, and could pick up 15 or 16 pounds 2 to 3 times before needing to rest for 30 minutes. (Tr. 553, 555, 556). As noted by the ALJ each of these limitations was significantly more severe than as related in the December 2003 questionnaire. (Tr. 25-26). She also considered the disparity between the progress notes in the medical records following his August 2005 surgery (Tr. 210; 222-23) and

11

Johnson's post-operative self-assessment that he "was unable to do a thing." (Tr. 137-38). See Tr. at 25-26.

The ALJ's credibility determination reflects a review of the objective medical evidence in addition to Plaintiff's subjective testimony, and is supported by substantial evidence in the record concerning the relevant period of April 21, 2003 through July 21, 2006. The ALJ thoroughly analyzed the medical evidence of record, Plaintiff's work history, and Plaintiff's subjective testimony in assessing the weight to be given to Johnson's testimony.

"It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted). The determination whether a claimant is able to work despite some pain "is within the province of the administrative agency and should be upheld if supported by substantial evidence." *Id*. Moreover, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). In the Fifth Circuit, an ALJ must give reasons for rejecting a claimant's subjective testimony only where the evidence clearly favors the claimant. *Id*. In this case, the ALJ considered the objective medical evidence, diagnoses and opinions, plaintiff's age, education, and work history, and plaintiff's subjective evidence in reaching her determination. (Tr. 11-20). Her findings of fact are supported by substantial evidence.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order

AFFIRMING the decision of the Commissioner and judgment DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 5th day of October, 2009.

*/s/ Wm. F. Sanderson, Jr.*
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.